IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MANAGEMENT CONSULTING, INC. )<br>d/b/a MANCON, )<br>)<br>Defendant. ) | No. 21-890<br><br>JURY TRIAL DEMANDED |

COMPLAINT OF THE UNITED STATES OF AMERICA
(Anti-Kickback Act, 41 U.S.C. §§ 8702, 8706)

The United States of America brings this action against Management Consulting, Inc. d/b/a Mancon ("Mancon") under the Anti-Kickback Act, 41 U.S.C. §§ 8702, 8706, for the kickbacks at issue in the criminal case of *United States v. Thomson*, No. 1:20-cr-00067 (E.D. Va., Alexandria Division, June 22, 2020). In *Thomson*, Armed Forces Services Corporation's ("AFSC's") former part owner and Senior Vice President Brodie Thomson ("Thomson") pleaded guilty to accepting kickbacks from a subcontractor, Special Media Enterprises, LLC ("SpecMed"), in exchange for providing favorable treatment in connection with the award of purchase orders on two of Mancon's prime government contracts. *See id.*, Dkt. 36 (Statement of Facts) at ¶¶ 7(b), 7(e), 11. Thomson also admitted that SpecMed paid kickbacks to two other former AFSC executives in exchange for providing favorable treatment in connection with the award of purchase orders on one of Mancon's prime government contracts. *See id.* ¶¶ 11(f)–11(g).

The kickbacks that SpecMed paid to Thomson and two other AFSC executives in exchange for work on Mancon's prime government contracts give rise to claims against Mancon under the strict-liability provision of the Anti-Kickback Act, 41 U.S.C. § 8706(a)(2).

## JURISDICTION AND VENUE

1. Subject matter jurisdiction is conferred on this Court by 28 U.S.C §§ 1331 and 1345 because the action arises under the Anti-Kickback Act, 41 U.S.C. §§ 8702, 8706.

2. The Court has personal jurisdiction over Mancon because Mancon's principal office and place of business is within the Commonwealth of Virginia, Mancon transacts or transacted business within the Commonwealth of Virginia, including contracting to supply services or things within the Commonwealth of Virginia, and one or more of the acts proscribed by 41 U.S.C. § 8702 and § 8706 occurred within the Commonwealth of Virginia.

3. Venue is proper in the Eastern District of Virginia, pursuant to 28 U.S.C. § 1391(b), because Mancon resides in the Eastern District of Virginia, and a substantial portion of the acts giving rise to the United States' claim under 41 U.S.C. § 8702 and § 8706 occurred in the Eastern District of Virginia.

## PARTIES

4. Plaintiff is the United States of America.

5. Defendant Mancon is a federal contractor incorporated in the Commonwealth of Virginia. Mancon's principal office and place of business is in Virginia Beach, Virginia.

## THE ANTI-KICKBACK ACT

6. The Anti-Kickback Act prohibits:

   1) providing, attempting to provide, or offering to provide a kickback;

   2) soliciting, accepting, or attempting to accept a kickback; or

> 3) including the amount of a kickback in the contract price that a subcontractor charges a prime contractor or a higher tier subcontractor or the price a prime contractor charges the Federal Government.

*See* 41 U.S.C. § 8702.

7. The term "kickback" is defined as "any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind that is provided to a prime contractor, prime contractor employee, subcontractor, or subcontractor employee to improperly obtain or reward favorable treatment in connection with a prime contract or a subcontract relating to a prime contract." *See id.* § 8701(2).

8. The term "subcontractor" is defined as:

> [A] person,[1] other than the prime contractor, that offers to furnish or furnishes supplies, materials, equipment, or services of any kind under a prime contract or a subcontract entered into in connection with the prime contract; and [] includes a person that offers to furnish or furnishes general supplies to the prime contractor or a higher tier subcontractor.

*See id.* §§ 8701(8)(A)–(B). The term "subcontractor employee" is defined as "an officer, partner, employee, or agent of a subcontractor." *See id.* § 8701(9).

9. The Anti-Kickback Act contains two separate and distinct civil penalty provisions: the strict liability provision, § 8706(a)(2); and the knowing provision, § 8706(a)(1).

---

[1] "The term 'person' means a corporation, partnership, business association of any kind, trust, joint-stock company, or individual." 41 U.S.C. § 8701(3).

10. The strict liability provision of the Anti-Kickback Act provides: "[t]he Federal Government in a civil action may recover from a person . . . whose employee, subcontractor, or subcontractor employee violates section 8702 of this title by providing, accepting, or charging a kickback a civil penalty equal to the amount of that kickback." *See id.* § 8706(a)(2).

11. The strict liability provision of the Anti-Kickback Act imposes civil liability on prime contractors for kickbacks that were paid in connection with the prime contractor's federal contract, either between the prime contractor's employees and a subcontractor or between a subcontractor's employees and another subcontractor. *See id.*

12. The strict liability provision of the Anti-Kickback Act does not require a showing of knowledge or engagement in the kickbacks. *See id.*

13. The Anti-Kickback Act also provides an enhanced penalty for defendants that knowingly engaged in kickbacks. The knowing provision of the Anti-Kickback Act provides:

> The Federal Government in a civil action may recover from a person [] that knowingly engages in conduct prohibited by section 8702 of this title a civil penalty equal to [] twice the amount of each kickback involved in the violation; and [] not more than $10,000 for each occurrence of prohibited conduct.

*See* § 8706(a)(1).

## FACTS

14. From April 2012 to March 2015, Mancon's second-tier subcontractor, SpecMed, paid $1,174,435.32 to three executives of Mancon's first-tier subcontractor, AFSC, in order to obtain and reward favorable treatment in connection with the award of purchase orders to SpecMed on two of Mancon's prime Government contracts: (A) Contract No. 7562BA-08-D0099, administered by the U.S. Department of Health and Human Services

(the "HHS Contract"); and (B) Contract No. M00264-12-C-0004, extended through Contract Nos. M00264-13-C-0021 and M00264-14-C-1009, administered by the U.S. Marine Corps (collectively, the "RCC Contract").

15. These payments from Mancon's subcontractor SpecMed to executives of Mancon's subcontractor AFSC were kickbacks that were incorporated into SpecMed's invoices and charged in connection with SpecMed's performance on Mancon's HHS and RCC Contracts.

A. Kickbacks on Mancon's Health and Human Services Contract.

16. In 2008, Mancon was selected as a prime contractor for the HHS Contract, which was an indefinite delivery, indefinite quantity contract to supply various services to federal government agencies and departments, including the Office of Secretary of Defense Wounded Warrior Care and Transition Program (the "Wounded Warrior Program").

17. Mancon was awarded work as a prime contractor under the HHS Contract through a series of delivery orders.

18. Mancon subcontracted portions of its work under the HHS Contract to its subcontractor AFSC, where Thomson was an executive at the time, through a series of purchase orders.

19. AFSC further subcontracted work on Mancon's HHS Contract to its subcontractor SpecMed through a series of purchase orders to provide professional services in support of the Wounded Warrior Program.

20. SpecMed had no prior experience or expertise relevant to its work on the HHS Contract or the Wounded Warrior Program more generally.

21. In exchange for purchase orders on Mancon's HHS Contract, SpecMed paid kickbacks to Thomson, who used his position and influence at AFSC to provide improper favorable treatment to SpecMed.

22. To generate the kickbacks that SpecMed paid to Thomson, SpecMed marked up invoices for work performed on Mancon's HHS Contract.

23. SpecMed divided the markup on Mancon's HHS Contract between Thomson and SpecMed.

24. After SpecMed divided the markup on invoices for work performed on Mancon's HHS Contract, SpecMed paid Thomson the larger share of the money to improperly obtain and reward favorable treatment in connection with Mancon's HHS Contract.

25. In 2012, SpecMed made five kickback payments to Thomson by issuing checks from SpecMed's bank account in Eugene, Oregon to Thomson in Woodbridge, Virginia. These five kickback payments totaled $856,323.98.[2]

26. Each of the five payments that SpecMed made to Thomson in 2012 were kickbacks that SpecMed paid in exchange for the award of purchase orders on Mancon's HHS Contract.

---

[2] The checks containing the kickback payments that SpecMed issued to Thomson in connection with Mancon's HHS Contract are dated April 16, 2012 (two checks), November 2, 2012 (two checks), and December 31, 2012.

B. <u>Kickbacks on Mancon's Recovery Care Contract</u>.

27. On April 3, 2012, the U.S. Marine Corps awarded the RCC Contract to Mancon to provide the U.S. Marine Corps Wounded Warrior Regiment with, among other things, recovery care coordinators to oversee and assist with the recovery and rehabilitation of wounded veterans.

28. Mancon subcontracted portions of the work on the RCC Contract to its subcontractor AFSC. AFSC further subcontracted work on Mancon's RRC Contract to its subcontractor SpecMed through a purchase order.

29. Thomson also influenced Mancon to subcontract portions of the work on the RCC Contract directly to its subcontractor SpecMed through a series of purchase orders.

30. In exchange for purchase orders on Mancon's RCC Contract, from October 2013 to March 2015, SpecMed paid kickbacks to Thomson and two other AFSC executives, AFSC Executive 1 and AFSC Executive 2, all of whom used their positions and influence at AFSC to provide improper favorable treatment to SpecMed.

31. Thomson also used his influence at Mancon to provide improper favorable treatment to Mancon's subcontractor SpecMed in exchange for kickbacks on Mancon's RCC Contract.

32. To generate the kickbacks, SpecMed marked up the invoices for work performed on Mancon's RCC Contract and submitted invoices for work under Mancon's RCC Contract that was never performed.

33. SpecMed divided the markup on Mancon's RCC Contract on a roughly equal basis between Thomson, AFSC Executive 1, and AFSC Executive 2, and SpecMed.

34. After SpecMed divided the markup on invoices for work performed on Mancon's RCC Contract, SpecMed paid Thomson, AFSC Executive 1, and AFSC Executive 2 their shares

of the money to improperly obtain and reward favorable treatment in connection with Mancon's RCC Contract.

35. SpecMed paid a total of $318,111.34 in kickbacks to Thomson, AFSC Executive 1, and AFSC Executive 2 in exchange for purchase orders on Mancon's RCC Contract. Specifically, in exchange for purchase orders on Mancon's RCC Contract, SpecMed paid:

    a. $111,963.68 in kickbacks to Thomson by issuing seven checks from SpecMed's bank account in Eugene, Oregon to Thomson in Woodbridge, Virginia;[3]

    b. $90,573.83 in kickbacks to AFSC Executive 1 by issuing six checks from SpecMed's bank account in Eugene, Oregon to AFSC Executive 1 in Virginia Beach, Virginia;[4] and

---

[3] The checks containing the kickback payments that SpecMed issued to Thomson in connection with Mancon's RCC Contract are dated October 8, 2013, November 26, 2013, May 23, 2014, September 4, 2014, December 8, 2014, December 15, 2014, and March 9, 2015.

[4] The checks containing the kickback payments that SpecMed issued to AFSC Executive 1 in connection with Mancon's RCC Contract are dated October 14, 2013, December 31, 2013, April 28, 2014, August 13, 2014, November 21, 2014, and December 29, 2014.

    c. $115,573.83 in kickbacks to AFSC Executive 2 by issuing six checks from SpecMed's bank account in Eugene, Oregon to AFSC Executive 2 in Vienna, Virginia.[5]

36. Consistent with the above, on June 22, 2020, Thomson pleaded guilty to charges related to accepting over $4.1 million in kickbacks from SpecMed in exchange for awarding purchase orders to SpecMed on Mancon's HHS Contract, Mancon's RCC Contract, and two prime contracts held by AFSC. *See Thomson*, No. 1:20-cr-00067, Dkt. Nos. 35–36.

## COUNT ONE

### Anti-Kickback Act, 41 U.S.C. §§ 8702, 8706

37. The United States realleges paragraphs 1 through 36.

38. Mancon violated the strict liability provision of the Anti-Kickback Act, 41 U.S.C. § 8706(a)(2), because Mancon's subcontractors and subcontractor employees provided, accepted, and/or charged kickbacks in connection with Mancon's HHS and RCC Contracts.

39. Mancon is liable to the United States for a civil penalty equal to $1,174,435.32, which represents the amount of the kickbacks that were provided, accepted, or charged in connection with Mancon's HHS and RCC Contracts. *See* § 8706(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff United States prays for judgment against Defendant as follows:

a. A civil penalty of $1,174,435.32; and

---

[5] The checks containing the kickback payments that SpecMed issued to AFSC Executive 2 in connection with Mancon's RCC Contract are dated October 14, 2013, December 31, 2013, April 28, 2014, August 13, 2014, November 21, 2014, and December 29, 2014.

9

    b.    Such other relief as the Court may deem just and proper, together with interest, costs, and the disbursements of this action.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States demands trial by jury as to all issues triable.

Dated: August 3, 2021

Respectfully submitted,

RAJ PAREKH
ACTING UNITED STATES ATTORNEY

BY: */s/ William Hochul*
William Hochul III
Kristin S. Starr
Assistant United States Attorneys
*Counsel for the United States of America*
2100 Jamieson Ave.
Alexandria, Virginia 22314
Tel:  (703) 203-7122
       (703) 220-7061
Fax:  (703) 299-3898
E-Mail: William.Hochul2@usdoj.gov
        Kristin.Starr@usdoj.gov